

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MICHAEL C. ANTONELLI,       )
                            )
         Plaintiff,         )
                            )
    v                       )   CASE No. 07-2016 (CKK)
                            )
FEDERAL BUREAU OF PRISONS,etal.,)
                            )
         Defendants.        )

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

RECEIVED
JAN - 9 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

   MICHAEL ANTONELLI respectfully submits that there are genuine issues of material fact that are not in dispute. He hereby lists each and every increment of the material facts he believes are not in dispute. In support of this statement plaintiff refers to his Declaration of Michael Antonelli submitted to this Court with xerox copies of his exhibits in support, attached hereto :

FOIA Counts

Count I

1. On October 21, 2006 plaintiff mailed an FOIA REQUEST to the Director of the Defendant FEDERAL BUREAU OF PRISONS (BOP) asking to review the entire BOP files of ANTHONY ALLAN LEMAY along with a Written Authorization for the release of records to him from Lemay. (See attached copy "A" and "B").
2. The Defendant BOP never responded to plaintiff's request of October 21, 2006 concerning Lemay's records requested. (See the Declaration of Michael Antonelli).
3. In not responding to plaintiff's request concerning Lemay's records, the BOP violated the FOIA.

Count II

1. On August 9, 2005 plaintiff mailed an FOIA REQUEST to the Director of the BOP asking for a copy of all video tapes taken on June 16, 2005 in B-2 Unit at FCC Medium in Forrest City, Arkansas. (See attached copy "C").
2. By letter dated September 2, 2005 to the Defendant OIP the plaintiff appealed the failure of the BOP to respond to his FOIA request within the time limits. (See copy as "D").
3. By letter dated September 21, 2005 the BOP sent plaintiff a no records response to his FOIA request. (See copy as "E").
4. By another letter dated September 21, 2005, the BOP sent the plaintiff a letter advising him that his request would be handled as expeditiously as possible. (See copy as "F").
5. By letter dated October 8, 2005, plaintiff appealed the no records response of September 21, 2005 to the OIP. (copy as "G").
6. The OIP acknowledged receipt of the FOIA appeal on October 18, 2005. (copy as "H").

7.   By letter dated December 27, 2006, the OIP advised plaintiff that his appeal was administratively closed because he owed USMS $42.10. (copy as "I").
8.   By letter to the OIP dated January 11, 2007, plaintiff notified the defendant OIP that he paid the $42.10 to the USMS and asked them to reopen his appeal. (See copy as "J").
9.   By letter to plaintiff dated April 9, 2007 the OIP notified the plaintiff that he owed the EOUSA $50.00 in fees and that his appeal was therefore closed. (See copy as "K").
10.   By letter dated April 15, 2007, the plaintiff notified the OIP that he had paid everything he owed to EOUSA on March 3, 2007 before the OIP even decided to close his appeal. (See copy as "L").
11.   Plaintiff later found out that the money owed EOUSA was not owed by him but by Michael Patrick Antonelli, another individual that requested information and did not pay. (See Michael Antonelli Declaration attached).
12.   Plaintiff is entitled to the records requested and OIP and BOP are improvidently blocking him from access to those records.
13.   The BOP and OIP are in violation of the FOIA as to this request.

### Count III

1.   By Inmate Request to Staff dated January 12, 2007, plaintiff requested from Ms Walters, Supervisor of Education at USP Big Sandy, a copy of all records she had with "some person high up in the ranks of the Department of Justice" concerning plaintiff's Freedom of Information Act requests. (See copy as "M").
2.   Attached to the request was a copy of the identical letter that plaintiff mailed to the Director of the BOP requesting the same information on that same date. (See copy as "N").
3.   Plaintiff filed an appeal under the FOIA to the OIP concerning the failure of the BOP to respond to plaintiff's request of January 12, 2007, on March 4, 2007. (See copy as "O").
4.   Plaintiff is entitled to the records requested and there is no legal reason to deny him them.
5.   The BOP has not provided plaintiff any of the information requested pursuant to this request and appeal.
6.   The BOP and the OIP are in violation of the FOIA.

### Count IV

1.   By letter dated August 3, 2006, to K. Taylor, VT Coordinator at FCC Forrest City, Arkansas, plaintiff requested a copy of the syllabus/curriculum that he had submitted to the education department at Forrest City, Medium facility. (See copy as "P").
2.   By letter dated August 27, 2006 to the Director of the BOP plaintiff requested copies of everything in the Education Department files at Forrest City, Arkansas Medium facility in connection to the classes he tutored or attempted to tutor. (See copy as "Q").
3.   By letter dated October 12, 2006 the BOP acknowledged receipt of the request. (See copy as "R").
4.   By letter dated November 29, 2006 plaintiff received 7 pages of material from the BOP. (See copy as "S").
5.   Plaintiff appealed the insufficient search by BOP for the records requested by letter to OIP dated January 25, 2007. (See copy as "T").

6. The OIP never answered the appeal of January 25, 2007. (See Declaration of Michael Antonelli).
7. The BOP and the OIP are in violation of the FOIA.

## Count V

1. By letter dated April 19, 2007, plaintiff requested the electronic phone recording of a phone call he made to his son Michael, a minor, on Christmas Eve of 2006, from the Director of the BOP. (See copy as "U").
2. By letter to BOP dated May 5, 2007, plaintiff clarified the phone number called on Christmas Eve. (See copy as "V").
3. By letter dated June 5, 2007, the BOP blanket denied plaintiff's request. (See copy as "W").
4. Plaintiff appealed the blanket denial of the BOP to the OIP by letter dated June 6, 2007. (See copy as "X").
5. OIP never responded to the appeal.
6. The BOP and the OIP are in violation of the FOIA.

## Count VI

1. By letter dated March 5, 2007 to the BOP plaintiff requested a copy of all telephonic recordings of the phone conversations had by him with his attorney Doug Roller in the possession of the BOP. (See copy as "Y").
2. The BOP acknowledged receipt of the request by letter dated March 20, 2007. (See copy as "Z").
3. The BOP sent plaintiff a no records response to his request dated April 12, 2007. (See copy as "AA").
4. Plaintiff appealed the no records response of the BOP by letter to OIP dated April 18, 2007. (See copy as "BB").
5. The OIP acknowledged receipt of the appeal by letter dated May 7, 2007. (See copy as "CC").
6. On June 5, 2007 plaintiff was advised by OIP that his appeal was closed because he owed money to the EOUSA. (See copy as "DD").
7. By letter dated July 29, 2007 to the OIP plaintiff provided the OIP with concrete factual evidence that he paid what he purportedly owed to the EOUSA on March 14, 2007 and asked that his appeal be reopened. (See copy as "EE").
8. As it turned out, the plaintiff never really owed that amount to the EOUSA in the first place because the EOUSA registered the debt by fraud. (See Antonelli Declaration).
9. The BOP and the OIP are in violation of the FOIA.

## Count VII

1. By letter dated August 3, 2005 to the BOP plaintiff requested all SIS, SIA and investigative records compiled at FCC Medium in Forrest City, Arkansas. (See copy as "FF").
2. By letter to OIP dated August 31, 2005 plaintiff appealed the unreasonable delay of BOP to respond to his request. (See copy as "GG").
3. By letter from BOP dated September 13, 2005 plaintiff was advised to contact local staff to receive records and that the investigative records sought were being processed. (See copy as HH").

4.  By letter dated October 3, 2005 the OIP acknowledged receipt of the plaintiff's appeal. (See copy as "II").
5.  By letter dated January 6, 2006 the BOP released certain records and blanket denied some records. (See copy as "JJ").
6.  Plaintiff again appealed to OIP by letter dated January 23, 2006 (See copy as "KK").
7.  OIP acknowledged receipt of the appeal by letter dated February 17, 2006. (See copy as "LL").
8.  The OIP generically affirmed the action of the BOP by letter dated March 30, 2006. (See copy as "MM").
9.  The OIP and the BOP are arbitrarily and capriciously withholding the purportedly exempt records from plaintiff.

## Count VIII

1.  By letter to BOP plaintiff requested a copy of all tort claims and records in connection to the tort claims he had filed.
2.  The BOP acknowledged receipt of the request by letter dated September 11, 2006. (See copy as "NN").
3.  By release dated October 31, 2006 certain records were provided plaintiff by BOP and certain information was excised and 31 pages were blanket denied him. (See copy as "OO").
4.  Plaintiff appealed these denials by letter to OIP dated November 12, 2006. (See copy as "PP").
5.  OIP never responded.
6.  OIP and BOP are in violation of the FOIA.

## Count IX

1.  By Inmate Request to Staff Member Alison Luekefeld at FCC Forrest City dated September 10, 2005 plaintiff requested a copy of his entire RDAP Treatment file including a hard-copy of all computer generated entries. (See copy as "QQ").
2.  By Inmate Request to James Lee Hoover at FCC plaintiff requested same on September 15, 2005. (See copy as "RR").
3.  By request to the Director of the BOP dated September 18, 2005 plaintiff requested his RDAP files. (See copy as "SS").
4.  By letter dated October 7, 2007 the BOP advised plaintiff to review the records at his local institution. (See copy as "TT").
5.  By letter dated October 11, 2005 plaintiff appealed to the OIP concerning the failure of the BOP to process his request. (See copy as "UU").
6.  By Inmate Request to the Chief Psychologist at FCC the plaintiff requested all entries put into the computer concerning his name. (See copy as "VV").
7.  By letter to the Director of the BOP dated October 24, 2005 the plaintiff requested a copy of all entries in Dr. Luekefeld's computer in connection to his name. (See copy as "WW").
8.  By Inmate Request to Dr. Luekefeld of FCC plaintiff requested all information in connection to his expulsion from RDAP. (See copy as "XX").
9.  By letter to OIP dated November 3, 2005 plaintiff appealed the failure of the BOP to provide him with his entire treatment file. (See copy as "YY").
10. By letter to OIP dated November 14, 2005 plaintiff appealed the BOP having withheld records from him. (See copy as "ZZ").

-4-

11. The OIP acknowledged receipt of the November 3, 2005 appeal by letter dated November 30, 2005 to plaintiff. (See copy as "AAA").
12. The OIP acknowledged receipt of the November 14, 2005 appeal by letter to plaintiff dated December 1, 2005. (See copy as "BBB").
13. By letter from OIP dated December 21, 2006, a year later, the plaintiff was advised that his appeal was closed because he owed the USMS $42.10. (See copy as "CCC").
14. By letter dated December 27, 2006, the OIP advised plaintiff that his second appeal was also closed. (See copy as "DDD").
15. By two letters to OIP dated January 11, 2007, plaintiff notified OIP that he had paid the money to USMS and asked that both appeals be reopened. (See copies as "EEE" and "FFF").
16. The OIP responded by letter dated April 9, 2007 advising the plaintiff that now the appeals were closed because he purportedly owed the EOUSA money. (See copy as "GGG").
17. By letter to OIP dated April 15, 2007 plaintiff notified OIP that he had completely paid the EOUSA all monies thought to be owed them, plus more, and asked again that his appeals be reopened. (See copy as "HHH").
18. As it turned out, plaintiff never really owed the EOUSA what the EOUSA thought he owed them. (See Antonelli Declaration).
19. The BOP and the OIP are in violation of the FOIA.

## Count X

1. By FOIA request to the Director of the BOP plaintiff asked for all information in connection to an incedent report he received on June 16, 2005. (See copy as "III").
2. By release dated July 25, 2006 plaintiff received certain records and the BOP withheld certain records. (See copy as "JJJ").
3. By letter dated August 1, 2006 plaintiff appealed the withholdings to the OIP. (See copy as "KKK").
4. OIP acknowledged receipt of the appeal by letter dated August 16, 2006. (See copy as "LLL").
5. The OIP on January 16, 2007 advised plaintiff that his appeal was closed because he owed the USMS $42.10. (See copy as "MMM").
6. By letter dated January 22, 2007, plaintiff advised OIP that he paid the $42.10 to USMS and asked that his appeal be reopened. (See copy as "NNN").
7. The OIP and BOP are in violation of the FOIA.

## Count XI

1. By letter to the Director of the BOP dated August 13, 2006 the plaintiff requested all records in connection to Incedent Report No. 1440394 and Administrative Remedy No. 411235. (See copy as "OOO").
2. The BOP acknowledged receipt of the request by letter dated October 18, 2006. (See copy as "PPP").
3. By release dated October 31, 2006 the BOP released certain records to plaintiff and withheld some. (See copy as "QQQ").
4. By letter to OIP dated November 11, 2006 plaintiff appealed the withholdings of October 31, 2006. (See copy as "RRR").
5. By letter to BOP dated August 4, 2006 plaintiff requested a copy of all records in connection to Admin. Remedy 383161 including anything marked sensitive by him. (See copy as "SSS").

6. By letter dated February 28, 2007 the BOP advised plaintiff that no action would be taken on his requests until he paid USMS the $42.10 owed them. (See copy as "TTT").
7. By letter to OIP dated March 5, 2007 plaintiff advised OIP that he had paid the USMS their money and that the action of BOP is improvident. (See copy as "UUU").
8. The BOP and the OIP are in violation of the FOIA.

### Count XII

1. By letter dated August 24, 2005 to the Director of the BOP the plaintiff requested all records in connection to a document for inmate review form. (See copy as "VVV").
2. The BOP never responded to the request. (See Antonelli Declaration).
3. The BOP is in violation of the FOIA.

### Count XIII

1. By letter dated August 8, 2006 to the Director of the BOP plaintiff requested a copy of all records in connection to Admin. Rem. No. 406470. (See copy as "WWW").
2. The BOP released some records and withheld some on October 20, 2006. (See copies as "XXX" and "YYY").
3. By letter to OIP dated November 15, 2006 plaintiff appealed the withholdings by BOP. (See copy as "ZZZ").
4. The OIP never responded to the appeal.
5. The BOP and OIP are in violation of the FOIA.

### Count XIV

1. By letter dated June 13, 2006 plaintiff requested all records in connection to Admin. Rem. ID No. 411064. (See copy as "AAAA").
2. By letter dated July 5, 2006 the BOP rejected the request. (See copy as "BBBB").
3. By letter to OIP dated August 2, 2006 plaintiff appealed that rejection. (See copy as "CCCC").
4. The OIP never responded to that appeal.
5. The BOP and the OIP are in violation of the FOIA.

### Count XV

1. By letter to the Director of the BOP dated August 3, 2006 plaintiff requested records in connection to Admin. Rem. No. 386968. (See copy as "DDDD").
2. By letter dated August 6, 2006 to the BOP plaintiff asked for records in connection to Admin. Rem. No. 392038. (See copy as "EEEE").
3. By letter to BOP dated July 19, 2006 plaintiff requested records in connection to Remedy No. 402868. (See copy as "FFFF").
4. By letters dated August 1, 2006 and August 8, 2006 the BOP rejected all these requests. (See copies as "GGGG" and "HHHH").
5. Plaintiff appealed to OIP on August 16, 2006. (See "IIII").
6. BOP responded on September 12, 2006. (See "JJJJ").
7. Plaintiff again appealed to OIP on October 24, 2006. (See "KKKK").
8. OIP never responded to that appeal.
9. BOP and OIP are in violation of the FOIA.

## Count XVI

1. By letter dated May 10, 2007, the ICE released one page of information to plaintiff that was forwarded to ICE for review by the USMS. (See copy as "LLLL").
2. By letter to the Department of Homeland Security dated June 21, 2007, plaintiff appealed the withholdings by ICE as arbitrary and capricious. (See copy as "MMMM").
3. ICE is in violation of the FOIA.

## Count XVII

1. By letter dated November 4, 2006 to the USMS plaintiff asked the USMS to send him the 421 pages of material that had been waiting to be released to him. (See copy as "NNNN").
2. By letter to plaintiff dated December 11, 2006, the USMS advised plaintiff via the OIP that his appeals have been closed as to the 410 pages of material withheld by USMS awaiting release. (See copy as "OOOO").
3. By letter to USMS dated January 8, 2007, plaintiff paid the $42.10 owed the USMS for the release of the 421 pages of material. (See copy as "PPPP").
4. By appeal letter to OIP dated February 17, 2007 plaintiff appealed the delay by USMS in releasing the records to him. (See copy as "QQQQ").
5. By letter to OIP dated February 18, 2007, plaintiff asked OIP to reopen his appeal 05-1520. (See copy as "RRRR").
6. USMS and OIP are in violation of the FOIA.

## Count XVIII

1. By letter to the Director of the FBI plaintiff asked for the addresses of all FBI Field Offices in every state including satellite field office addresses. (See copy as "SSSS").
2. By letter to OIP dated August 8, 2005 plaintiff appealed the failure of FBI to respond to his request of July 11, 2005. (See copy as "TTTT").
3. By letter dated November 5, 2006, to the Director of the FBI plaintiff asked FBI to search the I-Files and/or Hard-Drives for information in connection to Nancy Antonelli and James Valona who had submitted releases. (See copy as "UUUU").(releases enclosed).
4. Plaintiff appealed the failure of FBI to respond.
5. OIP advised plaintiff that his appeal was closed due to an outstand debt to USMS by OIP. (See copy as "VVVV").
6. By letter to the Director of FBI dated January 10, 2007 he notified FBI that the Chicago Field Office had blocked his FOIA request to them. (See copy as "WWWW").
7. By letter to OIP dated January 11, 2007 plaintiff advised OIP that he had paid the $42.10 to USMS and asked that his appeal be reopened. (See copy as "XXXX").
8. By letter dated February 9, 2007 FBI asked plaintiff to submit privacy waivers from Nancy Antonelli and James Valona.("YYYY").
9. By appeal to OIP dated February 11, 2007 plaintiff appealed the refusal of the Chicago Field Office of FBI to accept mail from him. (See copy as "ZZZZ").

10. By letter to the FBI dated February 18, 2007, plaintiff advised the FBI that he had already sent the required waivers of Ms Antonelli and Mr. Valona. (See copy as "AAAAA").

11. By letter to OIP dated February 19, 2007, plaintiff appealed the fact that FBI wanted second waivers from Ms Antonelli and Mr. Valona. (See copy as "BBBBB").

12. By letter to plaintiff dated March 6, 2007, the FBI notified plaintiff that he would have to direct his request to the Field Offices of the FBI. (See copy as "CCCCC").

13. By letter to FBI dated March 12, 2007, plaintiff extended his requests regarding search of the I-Drives and I-Files in the Chicago Field Office of the FBI. (See copy as "DDDDD").

14. By letter to OIP dated March 12, 2007, plaintiff appealed the failure of the FBI to process his requests. (See copy as "EEEEE").

15. By letter dated March 30, 2007, the OIP advised plaintiff that his request was forwarded to Winchester, Virginia. (See copy as "FFFFF").

16. By letter dated April 9, 2007 the OIP advised plaintiff his appeal concerning the Valona request was closed due to a debt owed purportedly to EOUSA. (See copy as "GGGGG").

17. By letter to OIP dated April 15, 2007, plaintiff notified OIP that any purported bills were paid. (See copy as "HHHHH").

18. By letter dated April 17, 2007, the FBI advised plaintiff it had not searched for the I-Drives concerning Ms Antonelli, Mr. Valona and plaintiff in the Chicago Field Office. (See copy as "IIIII").

19. By appeal to OIP dated April 24, 2007, plaintiff appealed the arbitrary & capricious improper search. (See copy as "JJJJJ").

20. By letter dated May 18, 2007 the OIP advised plaintiff that all his appeals were closed because he purportedly owed EOUSA money. (See copy as "KKKKK").

21. Plaintiff does not owe EOUSA any money whatsoever and that notion was the result of error of the EOUSA and the OIP. (See the Declaration of Michael Antonelli).

22. FBI and OIP are in violation of the FOIA.

### PRIVACY ACT COUNTS

#### Count A

1. On August 30, 2005, plaintiff was written a "Learning Contract" by Alison Luekefeld of the FCC at Forrest City, Arkansas; a form of a disciplinary report. This report states plaintiff has willfully failed to keep up his FRP obligations and has been refusing to pay his "Financial Responsibility Program" payments. (See Declaration of Michael Antonelli).

2. This "Learning Contract" with this information within is false and fictitious. It is maintained in the BOP records to this very day. This report has caused plaintiff to be ejected out of the RDAP Class, retaliatory transferred to a high security institution; all the proximate cause of which is the erroneous records kept by BOP. Plaintiff to this day suffers prejudice as a result of these false and fictitious records being maintained by the BOP. (See Antonelli Declaration).

3.   Plaintiff has attempted to have BOP correct these erroneous records by exhausting all his possible administrative remedies in accordance with the Privacy Act prerequisites. (See copies as #1 through #8 attached hereto).
4.   The BOP has failed to correct these erroneous records.
5.   The records are inaccurate; the BOP intentionally created these records and intentionally refused to correct them; plaintiff has suffered and will continue to suffer adverse determinations within the BOP as a result of the maintainence of these records. (See Declaration of Michael Antonelli).
6.   The BOP is in violation of the Privacy Act.

## Count B

1.   Since on or after August 30, 2005 Alison Luekefeld has maintained inaccurate records in the BOP computer database concerning plaintiff concerning false and fictitious information as to when she entered it actually on August 26, 2005. This was done for improper motive to cover up the fact that she had improvidently issued me a "Learning Contract." This backdating of the computer entries was done with malice and deliberately and willfully to retaliate against plaintiff for having exercised his clearly established first amendment constitutional rights to petition government for redress of grievances. (See Antonelli Declaration).
2.   These records exist to this date on the BOP computer database they are inaccurate; plaintiff has suffered adverse determinations and has been ejected from RDAP and retaliatory transfered and will continue to suffer them. (See Antonelli Declaration).
3.   Plaintiff has fully exhausted all available administrative remedies in his efforts to have this computer database record corrected to no avail and has fulfilled all prerequisites under the PA. (See copies as "#9" through "#13" attached).
4.   BOP has failed to correct these erroneous records.
5.   The BOP is in violation of the Privacy Act.

## Count C

1.   Alison Luekefeld on October 19/20 of 2005 created a document showing plaintiff showed lack of treatment readiness in RDAP at FCC Forrest City, Arkansas in a CHANGE IN DRUG ABUSE STATUS report that is maintained to this day in BOP files. This record is false and fictitious. These erroneous records were created intentionally in reprisal for plaintiff having exercised his first amendment rights to file grievances and assisting other inmates in drafting their petitions for redress. This was intentional and deliberate. The plaintiff has suffered and continues to suffer adverse determinations by the BOP and the U.S. Parole Commission and has been retaliatory transfered to a high security institution. (See Antonelli Declaration).
2.   The proximate cause of these adverse determinations in the past, present and in the future is the failure of the BOP to correct these erroneous records. (See Antonelli Declaration).

3.   Plaintiff has attempted to have BOP correct these erroneous records by exhausting all his possible administrative remedies in accordance with the Privacy Act prerequisites. (See copies as #14 through #21 attached).
4.   This adverse determination leaves plaintiff with the stigma of being a "Program Failure" and he has been ejected from RDAP and he has been and will continue to be prejudiced in front of the United States Parole Commission.
5.   BOP has failed to correct these erroneous records.
6.   The BOP is in violation of the Privacy Act.

### Count D

1.   The plaintiff is depicted in a Progress Report authored by Case Manager Francine Hellaire at the FCC Medium facility in Forrest City, Arkansas. This report depicts him as having "Poor Adjustment" which is an inacurate characterization of him. This was done by Hellaire deliberately and intentionally to prejudice plaintiff in reprisal for plaintiff having exercised his clearly established first amendment rights to petition government for redress of grievances and for assisting other inmates in the drafting of similar grievances.
2.   Plaintiff has been retaliatory transfered to a higher security institution as a result of these inaccurate records having been maintained by the BOP to this day.
3.   Plaintiff has attempted to have BOP correct these erroneous records by exhausting all his possible administrative remedies in accordance with the Privacy Act prerequisites. (See copies as #22 through #26).
4.   BOP has failed to correct these erroneous records.
5.   BOP is in violation of the Privacy Act.

### Count E

1.   The FEDERAL BUREAU OF PRISONS maintain inaccurate records in that the plaintiff stands convicted of the institutional offense of INSOLENCE AND REFUSING AN ORDER. This was done deliberately and intentionally and wilful and wanton by MARTHA DEPOORTER of FCC Forrest City, Arkansas in retaliation for plaintiff having exercised his clearly established first amendment constitutional rights to petition government for redress of grievances and assisting other inmates in drafting their petitions for redress. Plaintiff has been ejected out of RDAP, retaliatory transfered and otherwise given an adverse determination by the United States Parole Commission as a result of these false and fictitious records maintained by BOP.
2.   Plaintiff has attempted to have BOP correct these erroneous records by exhausting all his possible administrative remedies in accordance with the Privacy Act prerequisites. (See copies as #27 through 38).
3.   BOP has failed to correct these erroneous records.
4.   BOP is in violation of the Privacy Act.

Count F

1.   The FEDERAL BUREAU OF PRISONS maintain inaccurate records in that plaintiff's records reflect that he owes a FRP debt of $50.00 to some unamed state agency.  This erroneous record portrays plaintiff as one who cannot be financially responsible and has not been in the past.  This was and is a basis for adverse determinations and the proximate cause of his having been expelled from RDAP, retaliatory transfered to a high level security prison.  The records were being kept by KENNETH GILMORE at FCC Forrest City, Arkansas.  This is being done in retaliation against plaintiff for having exercised his first amendment rights.
2.   Plaintiff has attempted to have BOP correct these erroneous records by exhausting all his possible administrative remedies in accordance with the Privacy Act prerequisites. (See copies as #39 through 46).
3.   BOP has failed to correct these records.
4.   BOP is in violation of the Privacy Act.

Count G

1.   The FEDERAL BUREAU OF PRISONS maintain inaccurate records in that plaintiff's records reflect that he committed the institutional infraction of ENGAGING IN A GROUP DEMONSTRATION.  Plaintiff has been retaliatory transfered, denied parole, and his sentence has been extended 27 days due to the maintenance of the inaccurate records as aforesaid and the intentional, deliberate action by BOP staff members ALISON LUEKEFELD, JAMES LEE HOOVER and SIA BALTAZAR of FCC Arkansas having concocted, manufactured and fabricated this charge and conviction against plaintiff.  This was done in pure retaliation against plaintiff for having exercised his first amendment rights to petition for redress and assist other inmates in drafting thier petitions for redress.
2.   Plaintiff has attempted to have BOP correct these erroneous records by exhausting all his possible administrative remedies in accordance with the Privacy Act prerequisites. (See copies as #47 through 51).
3.   BOP has failed to correct these erroneous records.
4.   BOP is in violation of the Privacy Act.

Count H

1.   The FEDERAL BUREAU OF PRISONS maintain inaccurate records in their files of plaintiff in that the SECURITY DESIGNATION DATA SHEET reflects him as burning a victims house, convicted of assault, and 18 924c, which causes numerous adverse determinations against him in that he has been retaliatory transfered, his security/custody rating increased erroneously, he was denied parole and kept from a transfer closer to home.  These records are being kept intentionally, willfully and with malice by MARK CUNEEN of BOP in Chicago, Illinois who authored them and MELISSA PARR of BOP staff at Big Sandy, Kentucky.  These records were authored and kept in retaliation for plaintiff having exercised his first amendment rights.

-11-

2. Plaintiff has attempted to have BOP correct these erroneous records by exhausting all his possible administrative remedies in accordance with the Privacy Act prerequisites. (See copies as #52 through 61).
3. BOP has failed to correct these records.
4. BOP is in violation of the PA.

### Count I

1. The FEDERAL BUREAU OF PRISONS maintain inaccurate records in their files of plaintiff in that they falsely depict him as a "Program Failure" in a second Progress Report authored by MELISSA PARR at USP Big Sandy, Kentucky. Plaintiff is unequivocally a "Superior Program Acheiver" and has earned 65 certificates as of May 21, 2007 at USP BSY and has proven by prima facie evidence that he is not or ever was adjusting poorly. This manufacturing, concocting and fabrication was done by Melissa Parr intentionally and deliberately to prejudice petitioner for having exercised his clearly established first amendment rights. Adverse determinations were rendered and are presently still impugned upon plaintiff by the fact of these erroneous determinations and records kept by BOP by the United States Parole Commission. The proximate cause of these determinations is the false and fictitious records generated by Melissa Parr.
2. Plaintiff has attempted to have BOP correct these erroneous records by exhausting all his possible administrative remedies in accordance with the PA prerequisites. (See copies as #62 through 79 attached hereto).
3. BOP has failed to correct these erroneous records.
4. BOP is in violation of the PA.

Respectfully Submitted this 6th day of January, 2008.

By _____
MICHAEL ANTONELLI, Pro Se
04053-164
Federal Correctional Institution
Box 4000
Manchester, Kentucky 40962

### CERTIFICATE OF SERVICE

I, MICHAEL ANTONELLI, after having been duly sworn and under oath, hereby depose and state that on this day I have mailed a copy of this Statement to the United States Attorney @ 555 4th Street, NW in Washington, D. C. 20530.

Executed this 6th day of January, 2008.

By _____
Michael Antonelli, Affiant Herein

(28 USC Section 1746)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL C. ANTONELLI<br><br>Plaintiff(s),<br><br>vs.<br><br>FEDERAL BUREAU OF PRISONS,<br> ET AL<br><br>Defendant(s). | Civil Case No: **07-2016 (CKK)** |

## NOTICE REGARDING BULKY EXHIBIT

Pursuant to the procedures for filing documents electronically, as outlined in the previous Order of the Court, this Notice serves as notification that an exhibit has been filed in paper form in the Clerk's Office. It is available for public viewing and copying between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday.

**NANCY MAYER-WHITTINGTON**

Clerk

**Date:** 1/9/08