UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Michael C. Antonelli,                    :
                                         :
            Plaintiff,                   :
      v.                                 :            Civil Action No. 07-2016 (CKK)
                                         :
Federal Bureau of Prisons *et al.*,      :
                                         :
            Defendants.                  :

MEMORANDUM OPINION

This action brought *pro se* under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Privacy Act, 5 U.S.C. § 552a, is before the Court on the motion of the Federal

Bureau of Investigation ("FBI") to dismiss or for partial summary judgment [Dkt. No. 33] and

the joint motion of the Federal Bureau of Prisons ("BOP") and the Office of Information and

Privacy ("OIP") to dismiss or for partial summary judgment [Dkt. No. 37].[1]  Both motions

contain the respective movant's opposition to plaintiff's motion for partial summary judgment

[Dkt. No. 13], which will be denied for non-compliance with the rule governing such motions.

Upon consideration of the parties' submissions and the relevant parts of the record,[2] the Court

will grant the FBI's motion for partial summary judgment and OIP's motion to dismiss[3] and will

grant in part and deny in part BOP's motion for partial summary judgment.

----

[1]   In addition to the movants, plaintiff sued the United States Marshals Service and the
Department of Homeland Security's Immigration and Customs Enforcement ("ICE") for their
responses to his FOIA requests. By Order of August 4, 2008, the Court granted summary
judgment to ICE and the Marshals Service.  *See* Dkt. No. 45.  Plaintiff's Privacy Act claim is
against BOP only.

[2]   The complaint, which was assigned to the undersigned judge as related to *Antonelli v.
BATF*, No. 04-1180, consists of 27 counts.

[3]   Defendants rightly argue that OIP, the Administrative Appeals Unit for DOJ
(Declaration of Janice Galli McLeod ¶ 1), is not a proper party because the FOIA authorizes
actions against federal agencies only.  *See Prison Legal News v. Lappin*, 436 F. Supp.2d 17, 21-
22 (D.D.C. 2006) (proper FOIA defendant has "substantial independent authority in the exercise
of specific functions") (quoting *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971)).

I.  BACKGROUND

FOIA Claims

1.  FBI Records

In Count 18 of the Complaint [Dkt. No. 1], plaintiff challenges the FBI's responses to his

separate FOIA requests.  By letter of July 11, 2005, plaintiff requested from FBI Headquarters

"the addresses of all FBI Field Offices" and the "addresses of satellite offices to those field

offices."  Def.'s Mot., Declaration of David M. Hardy ("Hardy Decl."), Ex. A [Dkt. No. 33-7].

Because the information is publicly available, the FBI did not respond to plaintiff's request.

Hardy Decl. ¶ 6.

On November 5, 2006, plaintiff requested a search of "Hard-Drives or I-Files in the

Chicago & Milwaukee FBI Offices" for records pertaining to himself, Nancy Antonelli and

James Valona.  Id., Ex. B.  Although plaintiff claimed that he was amending his initial FOIA

request for such records, the FBI treated the request as new and by letter of February 8, 2007,

informed plaintiff that it would not process the request for third-party records without proof of

death or a privacy waiver from Nancy Antonelli and Valona.  Id., Ex. C.  By letter of February

18, 2007, plaintiff responded that he was "not sending you any more waivers from either Nancy

Antonelli and James Valona because I have already done so back in 2004 when I requested this

same information. . . ." Id., Ex. D.  Plaintiff also requested a search of the "I-Drives/I-Files in

both the Chicago and Milwaukee FBI Field Offices" for records pertaining to himself, Nancy

Antonelli and Valona.  Id.  By letter of March 6, 2007, FBI Headquarters replied that "[s]hould

you desire a check of our field office files, it will be necessary for you to direct your request to

the appropriate field office," id., Ex. E, which plaintiff did by letter of March 12, 2007 to the

Chicago Field Office.  *Id*., Ex. F.  Plaintiff stated that he was enclosing "copies of the written authorizations from Nancy Antonelli and James Valona for me to receive their records."  *Id*.

By letter of April 17, 2007, FBI Headquarters informed plaintiff that a search of the "computer network shared drives" was not conducted because the "drives contain unindexed and random subject matter material and the difficulties and effort of such a search would be unreasonably burdensome to this agency."  *Id*., Ex. G. The letter further advised plaintiff about his right to appeal the decision to OIP.  Plaintiff lodged his administrative appeal by notice of April 24, 2007, Ex. H, but OIP informed plaintiff by letter of May 18, 2007 that his appeal was closed because he owed another DOJ component, the Executive Office for United States Attorneys, $50.00 in processing fees.  *Id*., Ex. I.  However, the FBI has since confirmed that plaintiff paid the outstanding fee on March 14, 2008.  Hardy Decl. ¶ 14.

2.  <u>BOP Records</u>

Plaintiff's FOIA claims against BOP are set forth at Counts 1-15 of the Complaint; his Privacy Act claims are set forth at Counts A-I of the Complaint.

In Count 1 of the Complaint, plaintiff alleges that he mailed a FOIA request to the BOP Director to review the BOP file of Anthony Allan Lemay and included Lemay's written authorization to release his records to plaintiff.  According to plaintiff, BOP never responded to the request but BOP claims that it advised plaintiff by letter of December 21, 2006 that he had not submitted a proper FOIA request "because plaintiff did not request a copy of a BOP document or record."  Def.'s Mot., Declaration of Karen Summers ("Summers Decl.") ¶¶ 6-7. OIP has no record of an appeal from plaintiff with regard to this request.  Def.'s Mot., Declaration of Janice Galli McLeod ("McLeod Decl.") ¶ 7.

Count 2 of the Complaint concerns plaintiff's request of August 9, 2005 for videotapes taken on June 16, 2005 in the B2 housing unit of the Federal Correctional Complex ("FCC") in Forrest City, Arkansas.  On September 8, 2005, "staff at FCC Forrest City were instructed to conduct a search pursuant to plaintiff's request and forward any responsive records to [BOP's South Central Regional Office ("SCRO")]."  Summers Decl. ¶ 9.  But on September 21, 2005, FCC Forrest City informed SCRO that its "video taping system, or camera/video taping system records images for approximately 60 days and after this 60 day period, the tapes are erased."  *Id*. ¶ 11.  Thus, "[n]o video tapes were located with retrievable data for the time period of June 16, 2005."  *Id*.  By letter of September 21, 2005, BOP informed plaintiff that it had located no responsive records because "the video recordings that would have been responsive . . . were routinely destroyed prior to the submission of your request."  It also advised plaintiff of his right to appeal to OIP.  *Id*., Ex. 7.  By letter of April 9, 2007, OIP informed plaintiff that it was closing his appeal because of his failure to pay "past-due fees" to EOUSA.  *Id*., Ex. 8.

Count 3 of the Complaint concerns plaintiff's alleged request of January 1, 2007 to the Supervisor of Education at the United States Penitentiary Big Sandy in Inez, Kentucky, for "a copy of all records she had with 'some person high up in the ranks of [DOJ]' concerning plaintiff's [FOIA] requests," and to which plaintiff had attached a copy of an "identical letter" he had mailed to the BOP Director.  Compl. at 3.  Plaintiff alleges that he filed an appeal with OIP on March 4, 2007.  OIP "received an appeal from plaintiff dated March 4, 2007, stating the BOP failed to respond to his FOIA request dated January 12, 2007."  Summers Decl. ¶ 15.  But "[a] review of the BOP's FOIA database indicates" that BOP never received a request from plaintiff dated January 12, 2007.  *Id*.  By letter of April 26, 2007, OIP informed plaintiff that it was referring his March 4 letter to BOP for processing.  McLeod Decl. ¶ 19.

4

Count 4 of the Complaint concerns plaintiff's alleged requests for "a copy of the syllabus/curriculum that he had submitted to the education department at Forrest City, Arkansas FCC," and, by letter of August 27, 2006, for "copies of everything in the Education Department files at Forrest City, Arkansas Medium Facility in connection to the classes he tutored or attempted to tutor." Compl. at 3.  By letter of November 29, 2006, BOP released seven unredacted pages.  Summers Decl. ¶ 18 & Ex. 11.  Plaintiff alleges that he "appealed the insufficient search for records by the BOP."  Compl. at 3.  But OIP has no record of the appeal. McLeod Decl. ¶ 20.

Count 5 of the Complaint concerns plaintiff's request of April 19, 2007 for "electronic phone records of a phone call he made to his son Michael on Christmas Eve 2006."  Compl. at 3. By letter of June 5, 2007, BOP informed plaintiff that it had located a responsive record but, because the recording could not be "reasonably segregated," BOP could not release the record without "the appropriate written authorization from all parties involved in the recorded conversation."  Summers Decl., Ex. 15.  Plaintiff was further informed that if he provided a written authorization, BOP could "release the call on a CD to an address outside the prison, or e-mail the call to a valid e-mail address."  *Id*.  Otherwise, plaintiff could consider the response as a denial of records under FOIA exemption 7(C) and appeal the decision to OIP.  *Id*.  Plaintiff alleges that he appealed the "blanket denial" by letter of June 6, 2007.  Compl. at 3.  OIP acknowledged plaintiff's appeal by letter of June 20, 2007, but had yet to "adjudicate[]" it at "the outset of this litigation."  McLeod Decl. ¶ 22.

Count 6 of the Complaint concerns plaintiff's request of March 5, 2007 for "a copy of all telephonic recordings had with his attorney Doug Roller in the possession of the BOP."  Compl. at 4.  By letter of April 12, 2007, BOP informed plaintiff that it had located no responsive records

and advised him of his right to appeal to OIP.  Summers Decl., Ex. 19.  Plaintiff lodged an appeal

by letter of April 18, 2007, but by letter of June 5, 2007, OIP informed plaintiff that it had closed

his appeal because of his debt owed to EOUSA.  McLeod Decl. ¶¶ 23-24.  By letter of July 29,

2007, plaintiff allegedly "provided the OIP with concrete factual evidence that he paid what he

purportedly owed to the EOUSA on March 14, 2007 [and] asked that all his closed appeals be

reopened."  Compl. at 4.  During the course of this litigation, OIP, by letter of January 15, 2008,

informed plaintiff that "EOUSA had again searched its records for any evidence of payment of

his past-due FOIA debt, but found none."  McLeod Decl. ¶ 26.  Thus, OIP advised plaintiff that it

would not process any of his appeals until it received confirmation of his payment to EOUSA.

*Id*., Ex. DDD.

     Count 7 of the Complaint concerns plaintiff's request of August 3, 2005 for "all SIS, SIS

and investigative records compiled at FCC Medium in Forrest City, Arkansas."  Compl. at 4.  By

letter of January 6, 2006, BOP released to plaintiff 30 pages of records, 13 of which contained

information redacted pursuant FOIA exemption 7(C).  Summers Decl. ¶ 29.  In response to

plaintiff's administrative appeal, OIP, by letter of March 30, 2006, released "additional

information from two pages of BOP records previously released . . . in part, but otherwise

affirmed BOP's" action.  McLeod Decl. ¶ 30 & Ex. Y.

     Count 8 of the Complaint concerns plaintiff's request for "all records in connection to the

tort claims he had filed."  Compl. at 4.  By letter of October 31, 2006, BOP released 155 pages in

their entirety and 32 pages with redactions.  It withheld 31 pages in their entirety.  Summers ¶ 33

& Ex. 24.  BOP advised plaintiff that it withheld information pursuant to FOIA exemptions 2, 5,

7(C) and 7(F) and further advised him of his right to appeal to OIP.  Plaintiff alleges that he

lodged an appeal on November 12, 2006, Compl. at 4, but OIP has no record of the appeal. McLeod Decl. ¶ 31.

Count 9 of the Complaint concerns plaintiff's requests for "a copy of his entire RDAP Treatment File including a hard-copy of all computer entries generated." Compl. at 5. By letter of October 7, 2005, BOP informed plaintiff that his request for "computer entries" was too vague to process and that he could submit a new request "with additional information to assist in identifying any responsive records." Summers Decl., Ex. 26. BOP further informed plaintiff that "[d]ocuments regarding the RDAP program are routinely maintained in an inmate's psychology file and are normally releasable by institution staff" and that he should contact his "local institution staff and request access to the documents in your psychology file." *Id*. Plaintiff was advised that "[b]y copy of this letter, I am informing staff at the institution [to provide plaintiff] an opportunity to review the releaseable documents . . . an [to] obtain copies of releasable documents." *Id*. Plaintiff alleges that he appealed by letter of October 11, 2005, "the failure of BOP to act within the time limits." Compl. at 5, but OIP has no record of the appeal. McLeod Decl. ¶ 32.

Also in Count 9, plaintiff alleges that he lodged an appeal on November 3, 2005, based on BOP's untimely actions and another appeal on November 14, 2005, of "the withholding of certain records by BOP and the fact that BOP had not claimed any exemptions nor stated any reasons for the deletions." Compl. at 10. By letters of December 21, 2006 and December 27, 2006, OIP informed plaintiff that his appeals of the decision regarding the RDAP Treatment File were administratively closed because of his failure to pay past dues owed to the Marshals Service. McLeod Decl., Exs. CC, DD. OIP confirmed on March 8, 2007 that plaintiff had satisfied the debt owed to the Marshals Service on January 8, 2007, McLeod Decl. ¶ 38, but by

letter of April 9, 2007, "reminded plaintiff of other past-due FOIA processing fees owed for FOIA work done by EOUSA." *Id.* ¶ 39.  By letter of April 15, 2007, plaintiff responded that he had satisfied his debt to EOUSA, but, by letter of May 7, 2007, OIP informed plaintiff that EOUSA had no record of his payment. *Id.* ¶ 40.

Count 10 of the Complaint concerns plaintiff's request of April 15, 2006 "for all records in connection to the incident report he received on June 16, 2005." Compl. at 5.  By letter of July 25, 2006, BOP released to plaintiff 55 complete pages and 29 redacted pages; it withheld seven complete pages.  Summers Decl. ¶ 39 & Ex. 28.  BOP withheld information under FOIA exemptions 2, 5, 7(C) and 7(F) and informed plaintiff of his right to appeal to OIP. *Id.*, ¶ 40. Plaintiff appealed to OIP by letter of August 1, 2006.  McLeod Decl. ¶ 41.  By letter of January 16, 2007, OIP informed plaintiff that it had closed his appeal because of his outstanding debt, *id.* ¶ 43, which at "the outset of this litigation" plaintiff "had not substantiated" was completely paid. McLeod Decl. ¶ 45.

Count 11 of the Complaint concerns plaintiff's request of August 13, 2006 for "all information in connection to Incident Report No. 1440394 and Administrative Remedy No. 411235" and his request of August 4, 2006 for "all Sensitive BP-10's or BP-11's in connection to Administrative Remedy No. 383161."  Compl. at 6.  In response to the former request, BOP released on October 31, 2006, 23 complete pages and 18 redacted pages.  It withheld five complete pages.  Summers Decl. ¶ 43 & Ex. 31.  BOP withheld information under FOIA exemptions 2, 7(C) and 7(F). *Id.*  In response to the latter request, BOP informed plaintiff by letter of February 28, 2007 that no action would be taken because of his outstanding debt to the Marshals Service. *Id.* ¶ 44 & Ex. 33.  Plaintiff appealed the latter decision by letter of March 5, 2007.  McLeod Decl. ¶ 46.  OIP acknowledged the appeal by letter of April 6, 2007; the appeal

was pending when plaintiff filed this civil action. *Id.* ¶¶ 47-48.  Plaintiff alleges that he also appealed BOP's release of October 31, 2006, Compl. at 6, but OIP does not have a record of that appeal.  McLeod Decl. ¶¶ 49-51.

Count 12 of the Complaint concerns plaintiff's request for "all records in connection to the Document for Inmate Review form brought to him on August 23, 2005."  Compl. at 6. Plaintiff alleges that "BOP never responded," *id.*, but BOP claims that by letter of September 30, 2005, it released to plaintiff five pages in their entirety.  Summers Decl. ¶ 46 & Ex. 35

Count 13 of the Complaint concerns plaintiff's request for "a copy of all records in connection to Administrative Remedy Number 406470."  Compl. at 6.  By letter of October 20, 2006, BOP released to plaintiff 10 complete pages and one redacted page, citing FOIA exemption 5 as the basis for the redactions.  Summers Decl. ¶ 49 & Ex. 38.  Plaintiff alleges that he appealed to OIP, Compl. at 6, but BOP has no record of receiving the appeal.  McLeod Decl. ¶ 54.

Count 14 of the Complaint concerns plaintiff's request for "all records in connection to Central Office Remedy ID No. 411064."  Compl. at 6.  "The FOIA/PA Section of the BOP's Central Office" did not locate plaintiff's request; rather, "further research by BOP Central Office located correspondence from Plaintiff dated June 13, 2006."  By letter of July 5, 2006, BOP's National Inmate Appeals section informed plaintiff that his request to the Central Office "would be more appropriately handled through the FOIA/PA office" and instructed him on making such a request.  Summers Decl. ¶ 51 & Ex. 40.  In response to plaintiff's appeal, OIP informed plaintiff by letter of September 19, 2006 that "until BOP acted upon his request[,] there was no adverse determination for OIP to review."  McLeod Decl. ¶ 56 & Ex. RR.

Count 15 of the Complaint concerns plaintiff's request of August 3, 2006 "for all records in connection to Administrative Remedy No. 386968" and his request of August 6, 2006 "for all records in connection to Remedy ID No. 402868." Compl. at 7. By letter of September 12, 2006, BOP released to plaintiff 85 complete pages. Summers Decl. ¶ 53. Plaintiff allegedly "appealed the insufficient search to OIP on October 24, 2006," Compl. at 7, but OIP has no record of having received plaintiff's appeal. McLeod Decl. ¶ 61.

<u>Privacy Act Claims</u>

In Counts A-I of the Complaint, plaintiff alleges that BOP is knowingly maintaining inaccurate records pertaining to his custody, including his participation in the RDAP and Financial Responsibility Program. Compl. at 9-10; Summers Decl. ¶ 67. Plaintiff seeks to amend the records and monetary damages of $10,000 per count.

## II. LEGAL STANDARD

Summary judgment is appropriate upon a showing that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The FOIA requires a federal agency to release all records responsive to a properly submitted request except those protected from disclosure by one or more of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). The agency's disclosure obligations are triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). The FOIA authorizes the court only "to enjoin [a federal]

agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, the elements of a FOIA claim are (1) improperly (2) withheld (3) agency records. "Judicial authority to devise remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by [5 U.S.C.] § 552 [(a)(4)(B)], if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150 (1980).

In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). In opposing a summary judgment motion, plaintiff may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

III.  DISCUSSION

1.  Plaintiff's Motion for Partial Summary Judgment

In his motion for partial summary judgment, plaintiff concludes without any factual support that all of the defendants "are in blatant and flagrant violation of the statutory time limits of the FOIA; and that the Federal Bureau of Prisons is in gross derrogation [sic] of the Privacy Act." Dkt. No. 13. The motion is not "accompanied by a statement of material facts as to which the moving party contends there is no genuine issue," LCvR 7(h), and is otherwise devoid of any

basis for granting summary judgment to plaintiff.  His summary judgment motion therefore is
denied.

### 2.  FBI's Cross Motion for Summary Judgment

Notwithstanding the so-called *Fox-Neal* Order of June 10, 2008, plaintiff has not opposed
the FBI's dispositive motion.  With regard to plaintiff's request of July 11, 2005 for the addresses
of FBI field and/or satellite offices, the FBI rightly argues that it was not obligated under the
FOIA to produce such records because the information is publically accessible via its website or
the Federal Register.  *See* 5 U.S.C. § 552(a)(3) (excepting from an agency's disclosure
obligations information made available pursuant to paragraphs 1 and 2 of subsection (a)).

As to the request of November 5, 2006, for a search of certain records in "Hard-Drives or
I-Files in the Chicago & Milwaukee FBI Offices," plaintiff has not disputed that he "failed to
exhaust administrative remedies with respect to his FOIA requests to the FBI."  FBI's Statement
of Material Facts to Which There is No Genuine Issue ¶ 16.  Particularly, the FBI argues that
plaintiff failed to exhaust "in a number of ways," including by not reasonably describing "the
records sought from a computer system containing unindexed and random subject matter
material." Mem. of P. & A. at 12 (citing Hardy Decl. ¶¶ 11, 15, 16).

As a general rule, a FOIA requester must exhaust his administrative remedies.  *Oglesby v.*
*Dep't of the Army*, 920 F.2d 57, 65 (D.C. Cir. 1990).  The court need not dismiss a claim for
failure to exhaust if it determines that the "purposes and policies underlying the exhaustion
requirement" would not be undermined by reaching the merits.  *Wilbur v. CIA*, 355 F.3d 675, 677
(D.C. Cir. 2004); *see also Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003) (while
exhaustion is not jurisdictional, "as a jurisprudential doctrine, failure to exhaust precludes
judicial review" if a merits determination would undermine the purpose of permitting an agency

to review its determinations in the first instance).  On the other hand, to proceed on a claim where the agency has not had the opportunity to act would not only undercut the exhaustion requirement but would also encourage circumvention of the administrative process simply by filing a lawsuit.  *See Hidalgo*, 344 F.3d at 1259 (exhaustion policy determined to have been frustrated where the FOIA requester filed his lawsuit before "plac[ing] the substance of the FBI's response [applying FOIA exemptions] before the [administrative appellate office]").  Given that, among other barriers, plaintiff has not provided the FBI sufficient information to carry out its statutory duty to conduct a search, Hardy Decl. ¶ 16, the Court finds that the FBI is entitled to judgment as a matter of law based on plaintiff's failure to exhaust administrative remedies.  The Court will enter judgment for the FBI on Count 18 of the Complaint.

      3.  <u>BOP's Cross Motion for Summary Judgment as to the FOIA</u>

      BOP asserts that judgment is warranted on the FOIA claims because plaintiff failed to exhaust his administrative remedies as to counts 1-6, 8-13 and 15 of the Complaint.  Def.'s Mem. of P. & A. at 28.  It also asserts, however, that it released all reasonably segregable responsive records pertaining to counts 7, 12 and 15, properly applied FOIA exemptions 2, 5, 7(C) and 7(F) to any withheld records and conducted adequate searches for records sought under counts 2, 4, 6 and 10.  *Id*. at 31.

### A.  *Exhaustion of Administrative Remedies*

      As a general rule, a FOIA requester must exhaust administrative remedies prior to seeking judicial review.  As applicable here, exhaustion entails appealing BOP's adverse determinations to OIP and paying any assessed fees or appealing to OIP the denial of a fee waiver.  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 65-67 (D.C. Cir. 1990); *Trueblood v. U.S. Dept. of Treasury, I.R.S.*, 943 F. Supp. 64, 68 (D.D.C. 1996) (citing *Pollack v. Dep't of Justice*, 49 F.3d 115, 120

(4th Cir.), *cert. denied*, 518 U.S. 1032 (1995)).  An agency's disclosure obligations are not

triggered, however, until it has received a proper FOIA request in compliance with its published

regulations.  5 U.S.C. § 552(a)(3); *see* 5 U.S.C. § 552(a)(6)(A)(i) (requiring an agency "to

determine within twenty days *after the receipt*" of a properly submitted request "whether to

comply with the request" and to notify the requester accordingly) (emphasis added).

      Plaintiff has provided no evidence to refute BOP's declaration that it has no record of the

FOIA request upon which Count 14 is based, perhaps because the request was erroneously sent to

BOP's Central Office rather than to its FOIA/PA office and, thus, not in compliance with BOP's

regulations.  *See* Summers Decl. ¶ 51.  Nor has plaintiff provided any evidence to refute OIP's

declaration that he did not administratively appeal BOP's determinations challenged in counts 1,

3, 4, 8, 13 and 15 of the Complaint.  Moreover, plaintiff has provided no evidence of his payment

of outstanding fees prior to the filing of this action on November 7, 2007, with regard to Counts

2, 6, 9 and 10 of the Complaint.  As this Court has previously determined in addressing a similar

fee exhaustion claim with regard to plaintiff: "[b]ecause the payment or waiver of assessed fees

or an administrative appeal from the denial of a fee waiver request is a prerequisite to filing a

FOIA lawsuit in the district court. . . .  plaintiff's alleged payments tendered during the course of

this litigation . . .  are immaterial to the issue at hand.  Rather, under DOJ regulations, plaintiff's

failure to pay fees to which he had agreed 'within 30 days of the [billing] date' provided an

adequate basis for defendant to require payment "before [beginning] to process a new request or

[continuing] to process a pending request from that requester."  28 C.F. R. § 16.11(i)(3)."

*Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, Civ. Action No. 04-1180,

Mem. Op. of April 28, 2008 [Dkt. No. 213] at 9.

      The Court concludes that defendants are entitled to judgment as a matter of law on counts

1-4, 6, 8, 9-10, 13, 14 and 15 based on plaintiff's failure to exhaust his administrative remedies. That said, where defendants have nevertheless addressed the merits of some of the foregoing counts (8, 10 and 13), the Court will do likewise.

### B.  FOIA Exemptions

In Count 5, BOP withheld a taped recording of a phone call of plaintiff and his son because plaintiff had not provided a written release authorization from the son.  Summers Decl. ¶ 22, Ex. 15.  BOP based its determination on exemption 7(C), which protects from disclosure records compiled for law enforcement purposes to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Ms. Summers states that "the records at issue were compiled for law enforcement purposes during the course of BOP's performance of its law enforcement function of protecting inmates, staff and the community."  Summers Decl. ¶ 59.

Third-party information contained in law enforcement files is "categorically exempt" from disclosure under exemption 7(C), in the absence of an overriding public interest in its disclosure.  *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995).  In order to demonstrate an overriding public interest in disclosure, plaintiff must show that the withheld information is necessary to "shed any light on the [unlawful] conduct of any Government agency or official."  *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 772-73 (1989); accord *SafeCard Services, Inc., v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).  "Where the privacy concerns addressed by Exemption 7(C) are present, . . . [the requester] must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake [and that] . . . the information is likely to advance that interest."  *National*

15

*Archives and Records Administration v. Favish*, 541 U.S. 157, 172 (2004).  In making such a

showing, plaintiff must assert "more than a bare suspicion" of official misconduct. *Id*. at 174.  He

"must produce evidence that would warrant a belief by a reasonable person that the alleged

Government impropriety might have occurred." *Id*.  Otherwise, the balancing requirement does

not come into play.  *See id*. at 175.

In its response letter, BOP informed plaintiff that it "does not have the [technical]

capability to reasonably segregate [and release] your portion of the conversations from the

recording."  Summers Decl., Ex. 15.  Based on this same explanation, this Court has previously

approved BOP's withholding of recorded telephone conversations in their entirety in the absence

of the third-party's consent to the release.  *See Swope v. U.S.*, 439 F. Supp.2d 1, 5-8 (D.D.C.

2006); *McMillian v. Federal Bureau of Prisons*, 2004 WL 4953170 *7-8 (D.D.C., July 23, 2004).

Plaintiff has presented no basis for a departure here.  The Court therefore finds that BOP properly

invoked exemption 7(C) to the telephone recording and is entitled to judgment as a matter of law

on Count 5 of the Complaint.

In Count 7, BOP, again invoking exemption 7(C), properly redacted from 13 of 30 pages

of released records the "[n]ames of inmates and other individuals and their statements in

connection with a law enforcement investigation."  Summers Decl. ¶ 58 ("Table").  Plaintiff

states that "the public has an interest of [sic] exposing corrupt BOP employees which is what I

need the records for," but he does not substantiate this vague claim with any evidence of official

misconduct.  *See Favish*, 541 U.S. at 174.  The Court therefore finds that defendants are entitled

to judgment as a matter of law on Count 7 of the Complaint.

In Count 8, BOP located "[s]taff memos and documents provided to BOP legal counsel

for adjudication of plaintiff's tort claims."  Table.  It released 187 pages, 32 with redactions, and

withheld 31 pages, invoking FOIA exemptions 2, 5, 7(C) and 7(F).  *Id.*  BOP's declarant

generally describes the responsive records and applicable exemptions but she does not identify

any specific record that was withheld and link it with a specific exemption.  *See* Summers Decl.

¶¶ 60-66 & Table.  She therefore has provided no basis for finding "that the information withheld

logically falls within the claimed exemption," *Military Audit Project*, 656 F.2d at 738, or that

BOP properly withheld responsive pages in their entirety.  *See Trans-Pacific Policing Agreement

v. United States Customs Service*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999) (requiring the district

court to make a segregability finding whether raised by the parties or not).  BOP's defense of

counts 10, 11 and 13 suffers from the same deficiencies.  *See* Table.  The Court therefore denies

defendants' motion for summary judgment on counts 8, 10, 11 and 13 without prejudice to

reconsideration after supplementation of the record.

## C.  Adequacy of the Search

Where no records were found (Counts 2 and 6), the Court must determine the adequacy

of BOP's search.  *See Maydak v. U.S. Dep't. of Justice*, 254 F. Supp.2d 23, 44 (D.D.C. 2003) (an

inadequate search for records constitutes an improper withholding under the FOIA).  The agency

is required "to make a good faith effort to conduct a search for the requested records, using

methods which can reasonably be expected to produce the information requested."  *Int'l Trade

Overseas, Inc.*, 688 F. Supp. 33, 36 (D.D.C. 1998) (quoting *Marrera v. Dep't of Justice*, 622 F.

Supp. 51, 54 (D.D.C. 1985)) (citation omitted).  When an agency's search for records is

challenged, "the agency must show beyond material doubt [] that it has conducted a search

reasonably calculated to uncover all relevant documents."  *Weisberg v. U.S. Dep't. of Justice*,

705 F.2d 1344, 1351 (D.C. Cir. 1983).  For purposes of this showing, the agency "may rely upon

affidavits . . . , as long as they are relatively detailed and nonconclusory and  . . .  submitted in

good faith." *Id.* (citations and quotation marks omitted).  The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ."  *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); accord *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

According to Ms. Summers, "upon receipt of plaintiff's various FOIA requests, institution staff were instructed to conduct a search for the requested records."  Summers Decl. ¶ 54.[4]  Where the requested materials "would ordinarily be maintained in the inmate's Central File," plaintiff was advised pursuant to BOP policy "to conduct a local review of his records at the institution," *id.*, except that a search was performed for records maintained "in the 'FOI Exempt' portion of [plaintiff's] file."  *Id*.  Plaintiff "agree[s]" with the foregoing statements.  Pl's Response to Declaration of Karen Summers as to BOP & OIP [Dkt. No. 47-3] at 3 ¶ 54.  During the course of this litigation, "the BOP has conducted extensive searches of [its] FOIA database to

---

[4]   Ms. Summers is a Paralegal Specialist at BOP's South Central Regional Office, Consolidated Legal Center, in Dallas, Texas.  Her official responsibilities include "review and research of inmate civil legal matters."  Summers Decl. ¶ 1. "In furtherance of [her] responsibilities," Ms. Summers is "familiar with the policies and procedures for processing requests submitted under the [FOIA] and Privacy Acts."  *Id.* ¶ 2.  Ms. Summers' statements are based on her review of "the relevant BOP records of plaintiff" and her contact with "other relevant BOP staff that were involved in processing plaintiff's [FOIA] and Privacy Act requests."  Summers Decl. ¶ 3.  As is the case here, "[a] declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) if in [her] declaration, [she] attests to [her] personal knowledge of the procedures used in handling [a FOIA ] request and [her] familiarity with the documents in question."  *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (citations and internal quotation marks omitted).  *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir.1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir.1986)) (determining that the person in charge of a search is "the most appropriate person to provide a comprehensive affidavit").

determine which information plaintiff referred to in his initial and amended complaints,[5]" despite

that "in many instances plaintiff failed to sufficiently identify the FOIA requests he disputed." *Id*.

¶ 55.  Plaintiff "disagree[s]" with the BOP's description of searches performed after the filing of

the complaint, asserting that "[t]he BOP in most of these counts failed to adequately search for

the records."  Pl.'s Res. at 3 ¶ 55.  But typical of plaintiff's haphazard approach in this case and

the others over which the undersigned judge has presided, he has not specified the disputed

counts or stated any facts to create a genuine issue with regard to the adequacy of BOP's searches

conducted before and during this litigation.  Moreover, plaintiff's bald assertions do not provide

a basis for questioning the agency's declarations, which are otherwise accorded "a presumption

of good faith[.]"  *Long v. U.S. Dep't of Justice*, 450 F. Supp.2d 42, 54 (D.D.C. 2006) (citation

and quotation omitted); *see Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771 (D.C. Cir.

1981) (plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt").

The Court finds that BOP is entitled to judgment as a matter of law on the search issue.

4.  <u>BOP's Cross Motion for Summary Judgment as to the Privacy Act</u>

The Privacy Act requires federal agencies to maintain records used in making

determinations "with such accuracy, relevance, timeliness, and completeness as is reasonably

necessary to assure fairness to the individual" when making such determinations.  5 U.S.C. §

552a (e)(5); *see Deters v. U.S. Parole Commission*, 85 F.3d 655, 657 (D.C. Cir. 1996). Section

552a (d) allows individuals to access agency records about themselves and to request amendment

of records "they believe to be inaccurate, irrelevant, untimely, or incomplete." *Doe v. Federal

Bureau of Investigation*, 936 F.2d 1346, 1350 (D.C. Cir. 1991).  Subsections (g)(1)(A) and (C)

---

[5]  The record does not include an amended complaint; the Court assumes that Ms.
Summers is referring to the complaint and plaintiff's various responses to BOP's motion.

authorize civil actions to enforce the amendment provisions, and subsection (g)(4) provides for monetary damages, costs and attorneys' fees where the agency has acted intentionally or willfully.  *See Doe*, 936 F.3d at 1350; accord *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310-12 (D.C. Cir. 1992); *Deters*, 85 F.3d at 660-61.  Nevertheless, the Privacy Act authorizes the head of law enforcement agencies to enact regulations exempting certain types of records from specified provisions of the Act.  *See* 5 U.S.C. § 552a(j).

Plaintiff does not dispute BOP's description of his Privacy Act claim as seeking amendment of records regarding the following: "1) his participation in the RDAP and Financial Responsibility Program; 2) his disciplinary history; 3) his institutional adjustment; 4) his security designation and custody classification; and 5) information documented in his Pre-sentence Investigation report." Summers Decl. ¶ 67.  He also seeks monetary damages of $10,000 per count.  *See* Compl. at 9-11.  The records at issue are maintained in BOP's Inmate Central Record System, Summers Decl. ¶ 71, which DOJ has properly exempted "entirely from the access and amendment requirements of 5 U.S.C. § 552a(d) and the civil remedies of 5 U.S.C. § 552a(g)[.]" *Jackson v. Federal Bureau of Prisons*, 538 F. Supp.2d 194, 199 (citing 28 C.F.R. § 16.97(a)(4)); *see* accord *Elliott v. Federal Bureau of Prisons*, 521 F. Supp.2d 41, 56 (D.D.C. 2007) ("[C]ourts in this Circuit have held that plaintiffs are effectively barred from obtaining any remedy, including damages, under subsection (g), for BOP's alleged failure to maintain records pertaining to [them] with the mandated level of accuracy.") (citing *Brown v. BOP*, 498 F. Supp.2d 298, 302-03 (D.D.C. 2007) (citing cases including *Martinez v. BOP*, 444 F.3d 620, 624 (D.C. Cir. 2006)) (other citation, internal quotation marks and footnote omitted).  The Court therefore finds that BOP is entitled to judgment as a matter of law on the Privacy Act claims.

IV.  CONCLUSION

For the foregoing reasons, the Court grants the FBI's motion for summary judgment on

Count 18 of the Complaint and OIP's motion to dismiss it as a party-defendant.  In addition, the

Court grants in part and denies in part BOP's motion for summary judgment.  BOP's motion is

granted on all applicable counts of the Complaint except counts 8, 10, 11 and 13.  As to those

counts, BOP's motion is denied without prejudice to reconsideration following BOP's

supplementation of the record.  Finally, the Court denies plaintiff's motion for partial summary

judgment   A separate Order accompanies this Memorandum Opinion.


                          _____s/s_____
                          COLLEEN KOLLAR-KOTELLY
DATE: December 22, 2008          United States District Judge